IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERATION GOOD, NFP, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SEVENTH GENERATION, INC. ) <br> ) <br> ) <br> Defendant. ) | Civil Action No. 1:16-cv-9358 <br><br> Jury Trial Demanded |

**COMPLAINT FOR TRADEMARK COUNTERFEITING, INFRINGEMENT, UNFAIR COMPETITION AND RELATED CLAIMS**

Plaintiff Generation Good, NFP, by and through its attorneys, hereby alleges the following as and for its Complaint for Trademark Infringement, Unfair Competition and Related State and Common Law Claims against Defendant Seventh Generation, Inc. ("Seventh Generation" or "Defendant"):

**NATURE OF THE ACTION**

1. This is an action for trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a); deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; consumer fraud and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; and unfair competition in violation of Illinois common law.

2. This action results from Defendant's unauthorized use of the trademark GENERATION GOOD.

**PARTIES**

3. Generation Good, NFP is an Illinois not-for-profit corporation with its principal place of business at 27684 Irma Lee Circle, #104, Lake Forest, IL 60045 (Generation Good, NFP, itself, and as the owner of any and all rights acquired from its predecessors in interest, is hereafter referred to as "Plaintiff" or "Generation Good").

4. Generation Good is a not-for-profit entity based in Illinois and engaged in providing charitable and educational services.

5. Generation Good seeks to challenge the status quo and ask "why" to difficult questions. Generation Good questions what feeds the massive problems that plague our families and communities, and seeks the root causes of the pains and imbalances we see in society. Generation Good then seeks out people and organizations doing good work in solving these chronic issues. Once Generation Good identifies the right partner, Generation Good works to amplify and clarify the partner's message and supports the good causes via individual and crowdfunded support.

6. Generation Good focuses its work in the areas of health, wellness, nutrition, education and sustainability, including agriculture, the environment and economics. Recent examples of good works by Generation Good include:

- Installation of tower gardens in schools to help students make the connection between health, wellness, nutrition and sustainable agriculture.
- Meetings with civic leaders on potential projects in the areas of health, wellness, nutrition, education and sustainability.
- Helping design 3D LAB for students so they can create and learn how to solve problems.

2

- Working with partners to get a young boy hit by a stray bullet what he needs for home and school.
- Giving power back with a new power wheel chair.

7. Seventh Generation, Inc. is a Vermont corporation with its principal place of business at 60 Lake Street, Burlington, VT 05401.

8. Seventh Generation claims to manufacture products that are healthy solutions for the air, surfaces, fabrics, pets and people within your home—and for the community and environment outside of it. Seventh Generation's products seek to reduce the environmental impact, increase performance and safety, and create a more sustainable supply chain. Seventh Generation believes its responsibility is to set a course for a more mindful way of doing business, where companies act as partners with other stakeholders to create a brighter future for the whole planet.

9. The Seventh Generation Foundation focuses on stewarding social and environmental progress in the communities where people live, work, and do business through education, environmental conservation, research, and advocacy, including via the funding of some of the country's leading social and environmental charities.

10. Seventh Generation advertises and promotes the preparation of healthy foods, the importance of nutrition and healthy eating, and the distribution of healthy foods, including, among other advertising, through the "Enhancing Health" advertising on its website.

11. In addition to seeking a positive impact on the health of billions of people around the world, Seventh Generation seeks to generate revenue and profit. Seventh Generation's 2015 sales exceeded two hundred million dollars (US $200,000,000), and Defendant has seen double digit compounded annual growth over the last 10 years. Thus, Seventh Generation generates over sixteen million dollars (US $16,000,000) in revenue per month.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over Generation Good's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b). This Court has supplemental jurisdiction over Generation Good's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367, because these claims are joined with substantial and related claims under the trademark laws of the United States, and they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy or derive from a common nucleus of operative facts.

13. The exercise of personal jurisdiction by the Court over Defendant is appropriate in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

14. This Court has personal jurisdiction over Defendant because Defendant targets and makes sales in Illinois and in this District. Defendant also operates an Internet website at the domain www.seventhgeneration.com, which is accessible by and targets residents of Illinois and this District.

15. Defendant's products are currently available at a number of retail stores in this District, including, for example, CVS, Marianos, Target, Walgreens, and Whole Foods.

16. Defendant has purposefully availed itself of the benefits of doing business in Illinois by actually transacting business in Illinois. In undertaking these deliberate acts, including all facts and allegations set forth below, which are incorporated herein by reference, Defendant had fair warning and could reasonably anticipate that it could be called before a federal district court in Illinois.

17. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because Generation Good's principal place of business is in this District, Generation Good is doing business in this District, the claims arose in this District, and a substantial part of the events giving rise to the claims occurred in this District. Moreover,

Defendant transacts business in this District, has committed tortious acts in this District and has engaged in activities that subject Defendant to the jurisdiction of this Court. Finally, because Defendant is subject to personal jurisdiction in this District, venue is appropriate in this District.

## GENERATION GOOD AND ITS GENERATION GOOD® TRADEMARK

18. Since at least as early as April 2013, Generation Good has used the name and mark GENERATION GOOD in connection with, among other things, charitable and educational services.

19. On February 19, 2015, Generation Good applied to register the mark GENERATION GOOD.

20. On March 15, 2016, the U.S. Patent and Trademark Office ("USPTO") granted Generation Good U.S. Service Mark Registration No. 4,919,422 (the "Generation Good Registration" or the "Registration") for the mark GENERATION GOOD for exclusive use in connection with "Providing charitable and educational services for children, namely, to conduct classes to teach children to prepare healthy foods, to learn the importance of nutrition and healthy eating, and to distribute healthy foods." A copy of the Certificate of Registration is attached as Exhibit A.

21. Generation Good is currently using the GENERATION GOOD trademark in U.S. commerce in connection with its educational and charitable initiatives. Examples of these uses and descriptions of the initiatives can be found on the Generation Good website at www.generation-good.org:

5





22. The Generation Good Registration constitutes *prima facie* evidence of the validity of the GENERATION GOOD trademark and of Generation Good's exclusive ownership and exclusive right to use GENERATION GOOD in commerce in connection with the identified services. *See* 15 U.S.C. § 1057(b) and § 1115(a).

23. Generation Good also owns common law rights in the designation GENERATION GOOD in connection with various educational and charitable services. The marks reflected in the Generation Good Registration together with Generation Good's common law rights are hereinafter referred to as the "GENERATION GOOD Mark" or "the Mark."

**WILLFUL COUNTERFEITING AND INFRINGEMENT BY SEVENTH GENERATION**

24. On or after March 18, 2015, Defendant launched a major, nationwide advertising and marketing campaign using an identical counterfeit of the GENERATION GOOD Mark in connection with charitable and educational services.

25. Defendant's advertising and marketing campaign features the Mark in a button at the top of its Home Page in the following form:



26. By clicking the "Generation Good" button the user is taken to Defendant's "Generation Good" promotion page at http://www.seventhgeneration.com/generationgood (the "Promotion Page"). The Promotion Page prominently features the infringing GENERATION GOOD trademark that incorporates the Mark in its entirety.

27. On the Promotion Page, users are encouraged to register to become members of the "Generation Good" community. Once they do, they gain access to the "Generation Good Forum," in which various topics relating to health, nutrition, education, charity and childrearing are discussed.

28. Three of the forums provide nutrition information and nutrition education, the core services identified in the Registration (see Exhibit B):





29. Defendant also actively promotes the Generation Good community on its Facebook page at https://www.facebook.com/SeventhGeneration/ (*see* Exhibit C):



30. In addition, Defendant is using the Mark for a Twitter feed and user name (#GenerationGood) through which it encourages consumers to post photos from their "Healthy Baby Home Parties" and to tell others to sign up for the Generation Good community. *See* Exhibit D.



31. In short, Defendant's counterfeiting and infringement of the GENERATION GOOD Mark is ubiquitous throughout its social media and other marketing and communications initiatives.

32. Pursuant to 15 U.S.C. § 1072, the Generation Good Registration constitutes constructive notice of the GENERATION GOOD Mark by Generation Good, conferring a right of priority, nationwide in effect, commencing on the February 19, 2015 filing date, on or in connection with the goods or services specified in the Registration against any other party, including Defendant.

33. Further, at the time Defendant first used the GENERATION GOOD Mark in commerce, Defendant had knowledge of Generation Good's prior constructive use, and Defendant knew or should have known of the valuable reputation and goodwill symbolized by the GENERATION GOOD Mark. 15 U.S.C. § 1057(c).

34. At the time Defendant first used the GENERATION GOOD Mark in commerce, Defendant had actual notice of Generation Good's ownership of the GENERATION GOOD Mark.

35. On April 20, 2015, more than two months after Generation Good filed its application to register GENERATION GOOD, Defendant filed U.S. Service Mark Application Serial No. 86/603,126 (the "'126 Application") to register the same mark for related services. On July 29, 2015, the Trademark Examiner issued an Office Action notifying Defendant of Generation Good's prior pending application and stating that Defendant's application could be refused if and when Generation Good's application registered. Nevertheless, Defendant willfully continued its use of GENERATION GOOD.

36. On March 29, 2016, counsel for Generation Good sent Defendant a cease and desist letter demanding that Defendant immediately stop using the GENERATION GOOD Mark. Despite this actual notice and request, Defendant willfully continued its use of GENERATION GOOD.

37. On June 25, 2016, after the Generation Good Registration issued, the Trademark Examiner issued a second Office Action refusing registration of Defendant's mark on the grounds that it is likely to be confused with the GENERATION GOOD Mark.

38. Despite the letter and further emails from Generation Good's lawyers and despite the USPTO denial of Defendant's application, Defendant willfully, wantonly and maliciously continued use of the GENERATION GOOD Mark.

39. In fact, the forums with which Defendant uses the GENERATION GOOD Mark have continued to grow in popularity. In an article appearing this week on CMO.com, Seventh Generation's CMO Joey Bergstein represented that the company's Generation Good online community is now "200,000 people strong." This is a very significant number of people who are now likely to associate the GENERATION GOOD Mark with Defendant rather than Generation Good.

40. Prior to Defendant's adoption of the GENERATION GOOD Mark, Generation Good was embarking on a search engine optimization ("SEO") plan to get the word out on its charitable works via the Internet. However, before Generation Good could launch its SEO plan, Defendant jumped into the marketplace with its aggressive marketing and its own SEO plan for its Generation Good forums and social media initiatives. Defendant soon dominated the Internet. Now when one searches for the term "Generation Good" via the Google search engine platform, the first eight references are all to Defendant. Generation Good cannot be found.

41. With this type of dominance on the Internet by Defendant, Generation Good has found it will be impossible to compete for space on the Internet. Accordingly, Generation Good is unable to market its brand and is unable to raise funds. This is particularly disturbing given that Generation Good contacted Defendant months ago with the intent of working out an amicable resolution, but Defendant refused and instead chose to move forward with its willful infringement and dominance of the marketplace.

42. Further, when it became obvious to Defendant that the USPTO would not permit registration of the '126 Application in light of Generation Good's prior rights to GENERATION GOOD, Seventh Generation surreptitiously filed a new service mark application claiming a bona fide intent to use the mark GENERATION GOOD BY

SEVENTH GENERATION for related services (U.S. App. Ser. No. 87/036,304) (the "'304 Application").

43. Generation Good has never authorized, licensed or otherwise permitted Defendant to use the GENERATION GOOD Mark in its marketing and communications initiatives.

44. Defendant's continued use of the GENERATION GOOD Mark is willful and intentional and is intended to trade on and/or diminish the reputation and goodwill of Generation Good.

45. Defendant's use of the GENERATION GOOD Mark is likely to mislead, deceive and confuse consumers. It is likely that consumers will mistakenly believe that Defendant is connected to, associated with or in some way affiliated with Generation Good, when in fact no such connection, association or affiliation exists.

46. Alternatively, because Defendant is an enormous company with hundreds of millions of dollars in sales and is engaged in multimillion dollar national advertising and widespread use of the Mark in social media, Defendant's junior (or later in time) use of GENERATION GOOD is likely to overpower, overwhelm or swamp out the goodwill Generation Good owns in the Mark. Consumers will come to associate GENERATION GOOD with Defendant and will believe that Generation Good is the junior user or infringer, instead of the other way around. This infringement is known as reverse confusion, and it is actionable under Sections 32 and 43(a) of the Lanham Act. 15 U.S.C. §§ 1114(1) & 1125(a).

47. Defendant's conduct causes damage and irreparable injury to Generation Good, and to its goodwill and reputation.

48. As a result of the aforesaid acts by Defendant, Generation Good has suffered and continues to suffer substantial damage and irreparable injury. Generation Good has no adequate remedy at law, and unless Defendant is restrained and enjoined by the Court, these acts will continue to cause damage and irreparable injury to

Generation Good, and damage its goodwill and business reputation. Generation Good cannot ascertain the precise amount of its damage at this time.

49. Defendant's infringement of the GENERATION GOOD Mark is particularly surprising in light of its pervasive claims that it is a good corporate citizen. For example, Defendant regularly touts its certification as a "B Corp," a designation given to for-profit companies certified by the nonprofit B Lab "to meet rigorous standards of social and environmental performance, accountability and transparency." *See* www.bcorporation.net. However, Defendant's continued willful infringement of a trademark owned by a non-profit charity is inconsistent with the B Corp mission and certification. While Seventh Generation claims to consumers that it is socially conscious and accountable, its behavior regarding the GENERATION GOOD mark has been anything but.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING
## 15 U.S.C. §§ 1114(1), 1116(d) and 1117(b)

50. Generation Good repeats and realleges the allegations of Paragraphs 1 through 49 as though fully set forth herein.

51. Defendant's acts constitute trademark counterfeiting in violation of Section 32(1), 34(d) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d) and 1117(b).

52. Generation Good is the rightful owner of the Generation Good Registration, which constitutes proof of Generation Good's valid trademark rights and its entitlement to protection under the Lanham Act.

53. Defendant, without authorization from Generation Good, has used, and continues to use the GENERATION GOOD Mark in interstate commerce. Defendant's use of the GENERATION GOOD Mark constitutes use of a spurious designation that is identical to Generation Good's registered trademark.

12

54. Defendant uses the GENERATION GOOD Mark in connection with the services claimed by Generation Good in the Registration.

55. Defendant's use of the counterfeit GENERATION GOOD Mark by its very nature is likely to cause confusion, mistake or deception as to the source of Defendant's goods.

56. Defendant intentionally used this spurious designation knowing it is counterfeit.

57. Defendant's acts have occurred in interstate commerce and have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury to Generation Good, for which Generation Good has no adequate remedy at law.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114(1)

58. Generation Good repeats and realleges the allegations of Paragraphs 1 through 57 as though fully set forth herein.

59. Defendant's acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

60. Generation Good is the rightful owner of the Generation Good Registration, which constitutes proof of Generation Good's valid, exclusive trademark rights and its entitlement to protection under the Lanham Act.

61. Defendant has used, and continues to use, the GENERATION GOOD Mark in United States commerce in connection with the claimed services.

62. Defendant's unauthorized use of the GENERATION GOOD Mark is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendant's goods and services by Generation Good or as to the affiliation, connection or association between Generation Good and Defendant. The consuming public and the trade are likely to believe that Defendant's goods or services originate with Generation

13

Good; are licensed, sponsored or approved by Generation Good; or are in some way connected with or related to Generation Good, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

63. Alternatively, consumers are likely to believe that Generation Good is somehow affiliated with Defendant, or that Generation Good's use of the GENERATION GOOD Mark is licensed, sponsored or approved by Defendant, a dynamic referred to as reverse confusion.

64. Defendant has used the GENERATION GOOD Mark with full knowledge of Generation Good's prior rights and is continuing to use the Mark after being warned by Generation Good that its use is infringing. Defendant's continued use of the Mark constitutes intentional and willful infringement of Generation Good's trademark rights and entitles Generation Good to enhanced damages.

65. Seventh Generation has had actual notice of the GENERATION Good Mark since it first began using the Mark and at least as early as March 29, 2016, when Generation Good sent a cease and desist letter. Thus, Seventh Generation has been willfully infringing the GENERATION GOOD Mark and Generation Good Registration.

66. These infringing acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Generation Good, for which Generation Good has no adequate remedy at law.

**COUNT III**
**FEDERAL UNFAIR COMPETITION 15 U.S.C. § 1125(a)**

67. Generation Good repeats and realleges the allegations of Paragraphs 1 through 66 as though fully set forth herein.

68. Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. Defendant's unauthorized use in interstate commerce of the GENERATION GOOD Mark is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with Generation Good, or as to the origin, sponsorship, or approval of Defendant's goods or services, in violation of Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A).

70. Alternatively, consumers are likely to believe that Generation Good is somehow affiliated with Defendant, or that Generation Good's use of the GENERATION GOOD Mark is licensed, sponsored or approved by Defendant, a dynamic referred to as reverse confusion.

71. These acts have occurred in interstate commerce and have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Generation Good, for which Generation Good has no adequate remedy at law.

## COUNT IV
## ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 Ill. Comp. Stat. 510/1 et seq.

72. Generation Good repeats and realleges the allegations of Paragraphs 1 through 71 as though fully set forth herein.

73. Defendant's acts constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

74. Defendant's unauthorized use of the GENERATION GOOD Mark has caused, and is likely to cause in the future, confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendant's and Generation Good's businesses, as it gives rise to the incorrect belief that Defendant's business has some connection with Generation Good. These acts constitute deceptive trade practices in the course of Defendant's business in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*

75. These acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to Generation Good, for which Generation Good has no adequate remedy at law.

## COUNT V
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES 815 Ill. Comp. Stat. 505/1 *et seq.*

76. Generation Good repeats and realleges the allegations of Paragraphs 1 through 75 as though fully set forth herein.

77. Defendant's acts constitute consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.

78. Defendant's unauthorized use of the GENERATION GOOD Mark constitutes unfair competition and a deceptive act in the course of trade or commerce in Illinois.

79. Defendant intended that consumers would rely on this deception.

80. Defendant's acts have caused and will continue to cause harm to Generation Good in that they will deceive consumers and destroy the goodwill embodied in the GENERATION GOOD Mark.

## COUNT VI
## ILLINOIS COMMON LAW UNFAIR COMPETITION

81. Generation Good repeats and realleges the allegations of Paragraphs 1 through 80 as though fully set forth herein.

82. Defendant's acts constitute unfair competition under Illinois common law.

83. Defendant has misappropriated valuable property rights of Generation Good, has passed off its goods and services as those of Generation Good, is trading off the goodwill symbolized by the GENERATION GOOD Mark and is likely to cause

confusion or mistake, or to deceive members of the consuming public and the trade. These acts have continued in bad faith despite Defendant's knowledge of Generation Good's trademark rights. These acts constitute unfair competition in violation of the common law of the State of Illinois.

84. Defendant's acts have caused and will continue to cause harm to Generation Good.

## PRAYER FOR RELIEF

WHEREFORE, Generation Good prays that this Court enter a judgment and order:

1. That Defendant has willfully violated Sections 32(1) and 43(a) of the Lanham Act;

2. That Defendant committed acts of unfair competition and deceptive business and trade practices under Illinois common and statutory law;

3. That Defendant, its officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

    A. Using the GENERATION GOOD Mark, alone or in connection with other terms, in commerce in any manner;

    B. Using any name, mark, user name, social media handle or domain name that incorporates the GENERATION GOOD Mark, or is confusingly similar to the Mark, including but not limited to any reproduction, counterfeit, copy or colorable imitation of the GENERATION GOOD Mark, or registering, transferring or exercising control over any domain names or social media pages that incorporate, in whole or in part, the GENERATION GOOD Mark or anything confusingly similar;

  C. Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant is in any way affiliated, connected or associated with Generation Good or that Generation Good is in any way affiliated, connected or associated with Defendant;

  D. Licensing or authorizing others to use the GENERATION GOOD Mark, or any other mark that is confusingly similar to the GENERATION GOOD Mark;

  E. Injuring Generation Good's business reputation and the goodwill associated with the GENERATION GOOD Mark, and from otherwise unfairly competing with Generation Good in any manner whatsoever;

  F. Passing off Defendant's goods or services as those of Generation Good; and,

  G. Altering, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in the actual or constructive care, custody or control of Defendant that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located.

  4. That, pursuant to 15 U.S.C. § 1118, Defendant be required to deliver up and destroy all products, labels, packages, wrappers, photographs, digital files, mock-ups, advertisements, promotions and all other matter in the custody or under the control of Defendant that bear the GENERATION GOOD word mark or any other mark that is likely to be confused with the GENERATION GOOD Mark.

  5. That Defendant be ordered to shut down, close out and terminate all Twitter, Facebook, and other social media accounts or Internet pages that use the GENERATION GOOD Mark or feature any name incorporating, in whole or in part, the

GENERATION GOOD Mark or that are likely to cause confusion with the GENERATION GOOD Mark, and that Twitter, Facebook, and other pertinent social media providers be ordered to transfer such accounts to Plaintiff.

6. That, because of Defendant's willful actions and pursuant to 15 U.S.C. § 1117(b) (for counterfeiting), 15 U.S.C. § 1117(a) (as an "exceptional case"); and 815 Ill. Comp. Stat. 505/10a *et seq.*, Generation Good be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

    A.    All profits received by Defendant from sales and revenues of any kind from Defendant's first use of GENERATION GOOD on March 18, 2015 to present consisting of at least $300,000,000, less only proven elements of cost or deduction, and all damages sustained by Generation Good as a result of Defendant's actions; or if Generation Good so elects at any time before final judgment is rendered by the Court, to recover, instead of actual damages and profits, statutory damages of $2,000,000 per counterfeit mark per type of good and service sold, offered for sale, or distributed;

    B.    Treble damages or profits, whichever amount is greater;

    C.    Reasonable attorneys' fees; and,

    D.    The costs of the action.

7. That pursuant to 15 U.S.C. § 1116, Defendant be directed to file with the Court and serve on Generation Good within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

8. That the Court, pursuant to 15 U.S.C. § 1119 and the other powers and authority of this Court, issue a certified order to the Director of the USPTO and

Defendant to abandon with prejudice the '126 Application and the '304 Application based upon a likelihood of confusion with the GENERATION GOOD Mark and Registration; and,

9. That Generation Good be granted such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Generation Good, NFP

Dated: September 29, 16     By:     /jvnorvell/
Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala (Reg. No. 6275312)
Tom Monagan (Reg. No. 6278060)
Stephen D. Lott (Reg. No. 6317439)
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
Telephone: (888) 315-0732
Facsimile: (312) 268-5063
courts@norvellip.com

*Attorneys for Generation Good, NFP*